# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re: )
) **JUDGE RICHARD L. SPEER**
Elias/Cristina Gonzalez )
) Case No. 07-31122
    Debtor(s) )
)

## DECISION AND ORDER

This cause comes before the Court after a Hearing on the Motion of the United States Trustee to Dismiss Case Pursuant to 11 U.S.C. § 707(b)(1) and § 707(b)(3). Both the Debtors and the Trustee, Ericka Parker, have objected to the Motion to Dismiss. At the conclusion of the Hearing, the Court took the matter under advisement so as to afford time to thoroughly consider the issues raised by the Parties. The Court has now had this opportunity, and finds, for the reasons now explained, that the Motion of the United States Trustee should be Granted.

## FACTS

On March 28, 2007, the Debtors, Elias and Cristina Gonzalez, filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. The Debtors have two children, ages eight and four. Both the Debtors are employed. At the time they filed their petition, the Debtors had secured debt of $216,092.59, unsecured priority debt of $244.80, and unsecured nonpriority debt of $129,297.45. (Doc. No. 1 & 12).

According to their accompanying schedules, the Debtors, at the time they petitioned this Court for relief, had property worth $271,976.93. In terms of value, the Debtors' most significant assets consisted of (1) a residence valued at $167,000.00; (2) three automobiles, a 2002 Ford Expedition, a 2003 Honda Accord and a 1998 Dodge Ram, worth $29,605.00; (3) a 401(k) account

In re Elias/Cristina Gonzalez
Case No. 07-31122

held by Mrs. Gonzalez with an assigned value of $59,586.66; (4) a $5,000.00 tractor; and (5) a 1969 Airstream camper worth $2,200.00. Since petitioning this Court for relief, the following events have occurred with respect to this property.

First, the Debtors reaffirmed the debts on the first and second mortgage encumbering their residence. (Doc. No. 42).[1] The amount of debt represented by these mortgages totaled $176,427.64. To maintain the necessary obligations against the property, the Debtors disclosed monthly payments of $2,195.16. Of this, $1,594.31 represents the Debtors' monthly expenditures to service their two mortgages; the remainder is for taxes, insurance and utilities.

With respect to their three vehicles, the Debtors retained two, the 2002 Ford Expedition and the 1998 Dodge Ram, and surrendered one, the 2003 Honda Accord. With respect to the Ford Expedition, the Debtors, like with their residence, reaffirmed the debt on this vehicle. The amount of debt reaffirmed was $19,870.53, requiring monthly payments of $421.88. At the time of the reaffirmation, the present market value of the vehicle was $14,750.00. (Doc. No. 35).

For the 1998 Dodge Ram, the Debtors redeemed the vehicle. The cost for the redemption was $10,250.00, with the Debtors obtaining these funds by taking a loan against their 401(k) account. (Doc. No. 31). According to the Debtors, they are obligated to pay approximately $400.00 per month on this loan.

---

[1] Two mortgages encumber the Debtors' residence: a first mortgage to Sky Financial in the amount of $111,765.67; and a second mortgage to Citifinancial in the amount of $64,661.97. Only with respect to the first mortgage to Sky Financial has a reaffirmation agreement been filed.

Page 2

In re Elias/Cristina Gonzalez
Case No. 07-31122

Finally, with respect to the tractor and the camper, which were owned free and clear, the Debtors entered into an agreement with the Chapter 7 Trustee. Under this Agreement, the Debtors were permitted to retain the tractor and the camper in exchange for reimbursing their estate the sum of $5,000.00 at the rate of $500.00 per month. (Doc. No. 25).

From their employment, the Debtors submitted to the Court a gross monthly income of $8,059.24. (U.S.T. Ex. A). After accounting for mandatory deductions, including a $265.20 deduction by Mr. Gonzalez for spousal support and a $133.14 deduction by Ms. Gonzalez for a 401(k) contribution, the Debtors set forth a net monthly income of $5,483.66. *Id*. This figure, however, does not include two additional considerations bearing both positively and negatively on the Debtors' income. First, subtracting from their household income, the Debtors explained that Mr. Gonzalez's gross monthly wages will be reduced, potentially by as much as $800.00, due to the pending loss of a "shift bonus." Second, possibly adding to their household income, the evidence showed that, in the past, the Debtors have received a tax refund of approximately $2,000.00 per year.

Against their income, the Debtors claimed $5,265.99 in necessary, monthly expenditures, thereby leaving the Debtors' household a surplus of $217.67 per month. (U.S.T. Ex. B-1). In itemizing their monthly expenditures, the Debtors included those expenses already mentioned for their residence, $2,195.16, and for the reaffirmation of the 2002 Ford Expedition, $421.88. In addition, the Debtors set forth the following necessary, monthly expenditures:

| | |
|---|---|
| Telephone | $112.21 |
| Cell Phone | $118.34 |
| Food | $900.00 |
| Life Insurance | $163.78 |

Page 3

In re Elias/Cristina Gonzalez
Case No. 07-31122

However, lacking from the Debtors' itemized expenses were those costs associated with their 401(k) loan, approximately $400.00 per month, and the $500.00 per month they are presently obligated to pay the Chapter 7 trustee. (U.S.T. Ex. B-1, B-2).

## DISCUSSION

This matter is before the Court on the Motion of the United States Trustee to Dismiss. Matters concerning the dismissal of a case, which affects both the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(J)/(O). As a core proceeding, this Court has been conferred with the jurisdictional authority to enter a final order in this matter. 28 U.S.C. § 157(b)(1).

The United States Trustee (hereinafter "UST") brings its Motion to Dismiss under § 707(b)(1). This section provides that a court may dismiss a Chapter 7 case filed by an individual debtor whose debts are primarily consumer debts if it finds that the granting of relief would be "an abuse." As the movant, the UST carries the overall burden of demonstrating, by at least a preponderance of the evidence, that the Debtors' case should be dismissed. *In re Wright*, 364 B.R. 640, 643 (Bankr. N.D.Ohio 2007).

When determining whether "abuse" exists under § 707(b)(1), two different standards are prescribed. First, in § 707(b)(2) it is provided that, under a 'means test' formula, abuse may be presumed in instances where an ability to pay threshold is exceeded. Second, § 707(b)(3) sets forth that, even if no presumption of abuse arises, a court may still dismiss a case based upon the particular circumstances of the case.

Of these two standards, the Motion of the UST is based solely on § 707(b)(3). This provision provides:

Page 4

> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider–
>
> > (A) whether the debtor filed the petition in bad faith; or
> >
> > (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

In seeking to have the Debtors' case dismissed under this provision, the UST focused its arguments entirely on subparagraph (B), the totality of the circumstances, arguing that a dismissal is "warranted because the debtors have the ability to repay a substantial portion of their debts out of their current monthly income." (Doc. No. 36, at pg. 1).

Section 707(b)(3)(A) was added to the Bankruptcy Code in 2005 by the Congressional Act known as "BAPCPA."[2] The addition of this provision to the Code, however, did not signal a major departure from past practices. Prior to the implementation of BAPCPA, Chapter 7 cases were dismissed under § 707(b) for abuse – albeit under a more stringent standard for abuse, with the term abuse being modified by the adjective "substantial" – based upon the totality of the circumstances. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434 (6th Cir. 2004). To this end, this Court has held, and it is generally accepted, that § 707(b)(3) is best understood as simply a codification of pre-BAPCPA case law. *In re Wright*, 364 B.R. at 643; *In re Mestemaker*, 359 B.R. 849 (Bankr. N.D.Ohio 2007) (pre-BAPCPA case law is still helpful in determining abuse under § 707(b)(3)).

---

[2] Bankruptcy Abuse Prevention and Consumer Protection Act, effective October 17, 2005. Public Law 109-8, 119 Stat. 23.

Page 5

In re Elias/Cristina Gonzalez
Case No. 07-31122

Under pre-BAPCPA case law, the Sixth Circuit Court of Appeals set forth, in the case of *In re Krohn*, that a dismissal under § 707(b) could be predicated upon a debtor's "want of need." 886 F.2d 123, 126 (6th Cir. 1989). The Court in *In re Krohn* then further elaborated that a primary, and potentially dispositive consideration regarding a debtor's 'need' should center on the particular issue raised by the UST: whether the Debtors have the ability to repay their debts out of future earnings. *Id.* Specifically, the Court stated:

> Among the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings. That factor alone may be sufficient to warrant dismissal. For example, a court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease.

*Id.* (internal citations omitted).

A frequently utilized measure, when determining whether a debtor has the ability to repay their debts, is to ascertain whether, under a hypothetical Chapter 13 repayment plan, the debtor could repay a meaningful percentage of his or her unsecured debts. *In re Behlke*, 358 F.3d at 434-35; *In re Glenn*, 345 B.R. 831, 836 (Bankr. N.D.Ohio 2006). Such a determination is made by looking to a debtor's 'disposable income' which is the term used by the Bankruptcy Code when determining the amount of income a debtor must pay into a Chapter 13 plan of reorganization. 11 U.S.C. § 1325(b)(1)(B). 'Disposable income' is defined as that income received by a debtor which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. 11 U.S.C. § 1325(b)(2); *In re Pier*, 310 B.R. 347, 353 (Bankr. N.D.Ohio 2004).

According to those figures provided by them, the Debtors have available $217.67 in monthly 'disposable income' to repay their creditors. Assuming then, in a hypothetical Chapter 13 case, that the Debtors would propose a plan of reorganization over five years, this income would afford the

Page 6

In re Elias/Cristina Gonzalez
Case No. 07-31122

Debtors the ability to repay $13,060.20. This amounts to approximately 10% of the Debtors' unsecured, nonpriority debt which stands $129,297.45.

Although not dispositive, the potentiality that the Debtors, from their 'disposable income,' will only be able to pay 10% of their unsecured debt raises doubts that a Chapter 13 plan of reorganization would be productive. The Court, however, when computing a debtor's disposable income is not required to accept, at face value, the income and expense figures put forth. Rather, in its role as the trier-of-fact, the Court is under a duty to scrutinize a debtor's expenses, and make downward adjustments where necessary, so as to ensure that the debtor's expenses are reasonable. Similarly, when determining a debtor's 'disposable income,' a court may impute income to the debtor when it would be equitable to do so – *e.g.*, when the debtor is voluntarily underemployed. *In re Glenn*, 345 B.R. 831, 836 (Bankr. N.D.Ohio 2006). *See also Freeman v. Schulman (In re Freeman)*, 86 F.3d 478, 481 (6th Cir. 1996) (disposable income is to be interpreted broadly).

In looking closely at the Debtors' budget in this matter, questions arise as to the necessity of a number of the Debtors' expenses. First, as argued by the UST, Ms. Gonzalez's monthly 401(k) contribution of $133.14 is not ordinarily a permissible deduction against the Debtors' 'disposable income.' *In re Glenn*, 345 B.R. 831, 835 (Bankr. N.D.Ohio 2006). The same also extends to the approximately $400.00 the Debtors are allocating to repay the loan Ms. Gonzalez's took against her 401(k) account to redeem the 1998 Dodge Ram. Loan repayments on retirement accounts, like contributions, are generally impermissible deductions from a debtor's 'disposable income.'[3]

---

[3]

*See In re Shelly Marie Dile*, Case No. 05-30708 (August 5, 2005), available at http://www.ohnb.uscourts.gov (both contributions and loan repayments on retirement accounts are impermissible deductions from 'disposable income').

Page 7

In re Elias/Cristina Gonzalez
Case No. 07-31122

It is recognized, as the Debtors sought to point out, that, by borrowing funds from their 401(k) account to redeem their Dodge Ram, they utilized exempt assets. However, this fact, alone, will not operate to exclude from the Debtors' 'disposable income' the monthly repayments being made on the loan. Loan repayments to retirement accounts are considered 'disposable income' because of their unique character; the debtor is, in essence, repaying a loan to himself. Thus, as this Court, in relying upon Sixth Circuit precedent, has often explained: "it would be unfair to the creditors to allow the Debtors in the present case to commit part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend." *See, e.g., Id., citing Harshbarger v. Pees (In re Harshbarger)*, 66 F.3d 775 (6th Cir. 1995) and *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434-35 (6th Cir. 2004).

This does not mean that contributions and/or loan repayments to retirement accounts will always be considered a part of a debtor's 'disposable income.' Section 707(b)(3)(B), being a 'totality of the circumstances' test, requires that a court consider all relevant factors, thus leaving open the possibility that situations will arise requiring that a debtor be permitted to expense against their 'disposable income' contributions and/or loan repayments made to a retirement account. But as it regards the underlying equities in this matter, the evidence does not support a finding that the inclusion of the Debtors' 401(k) loan repayments as 'disposable income' would operate as a serious hardship against them. Both of the Debtors are still relatively young, and thus have sufficient time to rebuild their savings for retirement. Also, regarding any tax consequences, this Court has observed that, for purposes of a § 707(b) analysis, there is "no reason why the existence of a tax penalty should mitigate against abuse; a tax penalty is simply one of the inherent risks which one assumes when taking a loan against a 401(k) account." *In re Croskey*, 2007 WL 1302571, *3 (Bankr. N.D.Ohio 2007).

In addition to those deductions made against the 401(k) account, other expenses claimed by the Debtors are likewise not necessary. A family, with two small children, should not need to allocate

Page 8

**In re Elias/Cristina Gonzalez**
**Case No. 07-31122**

$900.00 per month for food. The same applies for the $230.55 monthly telecommunication expense claimed by the Debtors. In the absence of a particular need, it is patently unreasonable for two people, who contend that they cannot pay their debts, to allocate $118.34 per month for cell phones, while at the same time paying $112.21 per month for what is presumably a land phone line.

The Debtors will likewise not be permitted a $500.00 monthly deduction against their 'disposable income' which, under the terms of their agreement with the Trustee, they are obligated to pay each month until their estate is reimbursed the sum of $5,000.00. This Agreement was executed so as to enable the Debtors to retain a tractor and a camper. The retention of this type of property, however, does not lend itself to being necessary for the maintenance and support of the Debtors' household. And the Debtors offered no basis regarding the necessity of these items for their household. As such, the Debtors' desire to retain their tractor and camper seems an extravagance that they can ill afford.

The Court also questions the accuracy, and if accurate, the wisdom, of the Debtors allocating almost $2,200.00 toward their housing expenses. Of particular concern, not only do the first and second mortgages exceed the value of the Debtors' residence, – the two mortgages represent a debt of $176,427.64, the value of their residence is $167,000.00 – but the Debtors' housing expenses greatly exceed what would otherwise be permitted under the 'means test' of § 707(b)(2). Under the 'means test' of § 707(b)(2), the Debtors would be permitted to allocate $1,292.00 per month toward their housing expenses.[4]

---

[4]

The applicable local housing and utility standards for a family of four living in Hancock County, Ohio are: $841.00 mortgage; $451.00 nonmortgage. http://www.usdoj.gov/ust/eo/bapcpa/20070201/bci_data/housing_charts/irs_housing_charts_OH.htm

Page 9

In re Elias/Cristina Gonzalez
Case No. 07-31122

To be sure, the applicability of the 'means test' of § 707(b)(2) is not before the Court. However, as a pole for guidance, the expense figures provided in the 'means test' can be helpful when determining the reasonableness of a debtor's expenses under § 707(b)(3). The underlying goal of both the 'means test' of § 707(b)(2) and the 'totality of the circumstances' test of § 707(b)(3) is the same: to ensure that only those debtors deserving of Chapter 7 relief are afforded its benefits. *In re Edighoffer*, — B.R. —, 2007 WL 2769631, *3 (Bankr. N.D.Ohio 2007), *citing* HON. EUGENE R. WEDOFF, *Judicial Discretion to Find Abuse under 707(b)(3)*, 71 Mo. L.Rev. 1035, 1037 (2006).

As this Court's analysis up to this point shows, the financial figures put forth by the Debtors, when calculating their 'disposable income,' do not represent an accurate picture of their ability to repay their debts for purposes of § 707(b)(3). Rather, the foregoing shows that the Debtors, with some belt-tightening, have the ability to repay significantly more toward their unsecured debt than the $217.67 per month that they originally set forth as their 'disposable income.' Even discounting the 401(k) loan of $400.00 per month and the $500.00 that must be paid monthly to the Trustee, which were not originally included in the Debtors' budget, a reduction in just the Debtors' housing, food and communications expenses could be expected to reasonably yield at least $500.00, if not more, thereby more than tripling the Debtors' projected 'disposable income.'

Possible increases in the Debtors' 'disposable income' may also be found elsewhere. To name one, it would appear that, besides overstating some of their necessary expenses, the Debtors have understated their income. At the Hearing held in this matter, it was brought to the Court's attention that the Debtors have traditionally received tax refunds in the approximate amount of $2,000.00, or $166.00 per month.[5] Tax refunds, although not available on a monthly basis, are a source of income for a debtor; therefore, so long as there is the realistic prospect of similar refunds

---

5

It is realized that if the Debtors were to incur tax consequences as the result of their 401(k) loan, this figure would be reduced for a period of time.

Page 10

**In re Elias/Cristina Gonzalez**
**Case No. 07-31122**

in the future, tax refunds will be included in a determination of the Debtor's net income for purposes of §707(b). *In re Hand*, 323 B.R. 14, 19 (Bankr. D.N.H. 2005).

A principal point, however, of the Debtors' position against dismissal under § 707(b) centered on an expected loss of income. Specifically, the Debtors contend that their ability to repay any of their debt will be further constrained in the near future upon Mr. Gonzalez losing his 'shift bonus' which currently provides the Debtors' household with an additional $800.00 in gross monthly income. Yet, for the Court, this potential loss of income, rather than helping their position, raises critical questions as to the accuracy of the Debtors' budget.

Central to this problem: It can be generally assumed that, unless relying on exempt assets to fund a temporary shortfall in income, a Chapter 7 debtor cannot spend more than they earn. Yet, this is exactly what the Debtors are proposing. The $217.67 'disposable income' figure put forth by the Debtors does not take into consideration the shortfall that will soon arise in their household budget once Mr. Gonzalez loses his $800.00 monthly 'shift bonus.' At the same time, the Debtors have made representations to the Trustee and under their reaffirmation agreements that they have the continued ability to repay their debts.

Debtors, when defending against a § 707(b) action, cannot just throw numbers at the Court to suit their need. A debtor is under a continuous duty to provide the most accurate information possible. *See, e.g., In re Gartner*, 326 B.R. 357, 377 (Bankr. S.D.Tex.2005) (a Chapter 7 debtor has a continuous, affirmative duty to disclose complete and accurate information). *See also* 11 U.S.C. §§ 521 and 727(a)(3). But given that, without explanation, the budgetary figures put forth by the Debtors show a significant shortfall in their income, it can only be assumed that the Debtors have been less than forthcoming with respect to their complete financial situation. Compounding this problem: the Debtors' 'disposable income' figure, as also discussed, does not appear to have fully

Page 11

In re Elias/Cristina Gonzalez
Case No. 07-31122

accounted for the additional $900.00 in monthly outlays which the Debtors have allocated to pay for their 401(k) loan, their camper and their tractor.

For these reasons, the Court cannot attach a great amount of credibility to those budgetary figures provided by the Debtors. Resultantly, making an entirely accurate assessment of the Debtors' financial condition becomes impossible. Notwithstanding, there do exist these truths.

The Debtors enjoy an income significantly above the state medium income. The Debtors' gross monthly salary is $8,059.24; the state median income in Ohio for a family of four is $68,890.00 per year, or $5,741.00 per month.[6] Moreover, to some degree, the Debtors have understated their income. In addition, the Debtors have set some of their expenses at a level which is unreasonably high, and thus unnecessary for their maintenance and support. Similarly, the Debtors, who despite claiming an inability to pay their creditors, seek to retain and then pay for property which is not necessary for their maintenance and support.

On this balance, the Court can only conclude that the Debtors in this matter, although having financial difficulties, fall into the class of debtors that the Congress of the United States intended to cover when it modified the standard for abuse under § 707(b). As such, the filing of this case by the Debtors under Chapter 7 constitutes an abuse within the meaning of § 707(b)(1) and § 707(b)(3). In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

---

[6] http://www.usdoj.gov/ust/eo/bapcpa/20070201/bci_data/median_income_table.htm

Page 12

In re Elias/Cristina Gonzalez
Case No. 07-31122

Accordingly, it is

**ORDERED** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on Friday, October 26, 2007, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

***IT IS FURTHER ORDERED*** that, subject to the Debtors' election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b)(1) and § 707(b)(3), be, and is hereby, GRANTED.

Dated: October 15, 2007

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 13

# **CERTIFICATE OF SERVICE**

Copies were mailed this 15th day of October, 2007, to the following parties:

Cristina Salinas and Elias Ruiz Gonzalez
2555 S.R. 37
Findlay, OH 45840

Patti Baumgartner-Novak
612 S Main St, #104
Findlay, OH 45840

Ericka S Parker
33 S. Michigan
Suite 203
Toledo, OH 43604

Office of the U.S. Trustee
c/o Ronna Jackson
U.S. Courthouse
201 Superior Ave, East
#441
Cleveland, OH 44114


/s/ Robert C.W. Birmingham
Deputy Clerk, U.S. Bankruptcy Court